## THE CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY

*v.*

### FRANCIS M. MARTIN.

*Filed at Ottawa November 17, 1884.*

1. EVIDENCE—*in suit for personal injury—to show the plaintiff suffered pain from the injury.* On the trial in an action for a personal injury, the plaintiff called his attending physician, who testified that he had examined the plaintiff, who stated the symptoms, and that he had suffered pain. The witness was then asked whether the plaintiff was feigning or "making believe," to which he answered, "No, sir; I know he did not, from examination and tests:" *Held,* that, with the explanation as to his means of knowledge, there was no error in the admission of the evidence. The answer could only be understood as a deduction or conclusion from the examination and tests made.

2. In such a case, the attending physician, having every means of observing the symptoms, may be asked if the patient suffered pain, and his answer in the affirmative can be considered only as an opinion based upon actual facts and tests. It does not even require an expert to know the existence of pain from the nature of the injury and the patient's outward manifestations.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Henry county; the Hon. JOHN J. GLENN, Judge, presiding.

Mr. H. BIGELOW, for the appellant.

Mr. CHARLES DUNHAM, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellee commenced an action against appellant to recover for an injury sustained, as he claims, by reason of the negligence of appellant's servants. It is claimed that in repairing the platform of appellant's depot, its servants left it in a dangerous condition, and appellee, in passing over it, fell, and was seriously injured. On a trial the jury found a verdict for plaintiff for $3560. A motion for a new trial was overruled, and judgment rendered on the verdict. Defendant appealed to the Appellate Court for the Second District, where the judg-

ment was affirmed, and the case is brought to this court, and a reversal is asked.

All controverted facts in the case, including that of the amount of damages, have been found by the jury, and the statute has placed them beyond consideration by us. The facts, then, being conclusively found, we shall only consider the legal questions raised on the record.

It is first urged that the court erred in permitting a question to be asked, and answered by Dr. Tait, a witness called by appellee. He had testified that he had examined appellee, who stated his symptoms, and that he had suffered pain, when witness was asked by appellee's counsel: "Well, was he feigning them, or making believe?" The answer was: "No, sir; I know he did not, from examination and tests." Appellant claims this was error,—that he might be asked for his opinion, but not to state positively what he nor any one else could certainly know; that one person can not know whether another suffers pain; that he may have an opinion, but can not have knowledge on such questions. This may be abstractly true, but there are laws of nature uniform in their action. Experience teaches that fire applied to any portion of the human, and, in fact, to the animal, organization, will produce pain. This effect is so nearly uniform that it may be regarded universal. There are but few exceptions, and they depend upon nervous derangement amounting virtually to the destruction of the sense of feeling. All persons would unhesitatingly say that they know the application of a high degree of heat to the animal system will produce pain. We know that it does on ourselves, and when applied to others we observe the same manifestations as produced on ourselves,— hence we may say we know it produces pain on others; yet we have not, nor can we, feel their pain, nor can we measure its intensity, but we may say, from the cause and manifestations, that we know another suffers pain. When a person is suffering great pain, there are manifestations that it does not

2—112 ILL.

require an expert,—if there can be one in such cases,—to determine that pain exists. Had the answer, "no," remained unexplained, it may be there would have been error; but the witness explained that he knew by examination, and tests he had used. What could the jury have concluded but his answer was a deduction from the examination and tests he employed, and from the manifestations of pain he observed? The jury, from this qualification, could not have supposed his answer implied absolute knowledge, but that his answer was based on, and was the result of, the examination and tests referred to in the qualification to his answer. We are of opinion that this evidence could not have misled the jury. It requires no great degree of intelligence to correctly conclude that his answer, thus limited, was but a deduction from the examination and tests he had employed.

It is also urged that it was error to permit this witness to testify that appellee suffered pain,—that, at the most, the witness could but give his opinion. A physician, or a nurse attending a patient, can, from all the circumstances surrounding the case, determine with almost precision whether the patient suffers pain. They can determine with almost absolute certainty. We are not, therefore, prepared to hold that the attending physician, having every means of observing all the symptoms, may not be asked whether the patient did not suffer pain. We have held that the physician may testify to what the patient said in reference to suffering pain. Such evidence is more liable to be feigned than the physician's or nurse's observation. Whilst this evidence, like the other, should have been confined to the opinion of the witness, the jury must have considered it as being but opinion, although more positive in form. All would have so understood the answer. We are of opinion that if it was error, it was such as could not, nor did it, prejudice appellant.

Finding no error in the record, the judgment of the Appellate Court is affirmed.